<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| EDUARDO HERNANDEZ, GREG HOFER, MARGARET CRINER, ROBERT URANTIA, GLENN PARKER, and MAURO TUSO, on behalf of themselves and all others similarly situated, | : : : : : : : : | |
| Plaintiffs, | : : | |
| v. | : : : | Case No. 3:19-cv-15679-BRM-TJB |
| JOHNSON & JOHNSON CONSUMER INC., | : : : : | **OPINION** |
| Defendant. | : : | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion to Dismiss filed by Defendant Johnson & Johnson Consumer Inc. ("J&J" or "Defendant") seeking to dismiss Plaintiffs Eduardo Hernandez ("Hernandez"), Greg Hofer ("Hofer"), Margaret Criner ("Criner"), Robert Uratina ("Uratina"), Glenn Parker ("Parker"), and Mauro Tuso ("Tuso") (collectively, "Plaintiffs") Class Action Complaint ("Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 23.) Also before the Court is Plaintiffs' Motion for Leave to File Supplemental Authority in Support of its Opposition to the Motion to Dismiss. (ECF No. 29.) Both Motions are opposed. (ECF Nos. 26 & 30.) Having reviewed the submissions filed in connection with the motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause appearing, Defendant's Motion to Dismiss is **GRANTED in part and DENIED in part** and Plaintiffs' Motion for Leave to File Supplemental Authority is **DENIED.**

I. **BACKGROUND**

For the purposes of this Motion to Dismiss, the Court accepts the factual allegations in the Amended Complaint as true and draws all inferences in the light most favorable to Plaintiffs. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Furthermore, the Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

This matter stems from J&J's purportedly false labelling of their Tylenol® Extra Strength Rapid Release Gelcaps ("Rapid Release Gelcaps") (*See generally* ECF No. 1.) Defendant is a New Jersey corporation in the business of manufacturing, marketing, and distributing over-the-counter products to consumers worldwide, including analgesic or pain-relieving medicines such as Tylenol. (*Id.* ¶¶ 2, 22.)

In 2005, Defendant first introduced its Rapid Release Gelcaps that purported to relieve pain "even faster than before." (*Id.* ¶¶ 45-48.) After first being introduced to the public in 2008, the Rapid Release Gelcaps were recalled in 2009 until their re-release in 2017. (*Id.* ¶¶ 50-51.) Following the re-release, Defendant heavily marketed the Rapid Release Gelcaps, emphasizing the speed at which the gels relieved pain.[1] (*Id.* ¶¶ 53-63.) However, a 2018 study of the Rapid Release Gelcaps revealed the products "not only fail to work faster, [but] they actually work slower than their traditional acetaminophen counterparts, such as tablets."[2] (*Id.* ¶ 70.) Indeed, Plaintiffs

---

[1] Defendant advertising of Rapid Release Gelcaps included statements such as, "works at the speed of life," "only [Rapid Release Gelcaps] have laser drilled holes," "release medicine fast for fast pain relief," "[s]tarts to dissolve in seconds and relieves pain fast," and "Gelcaps with specially designed holes to release powerful medicine even faster than before." (ECF No. 1 ¶¶ 61-63.)

[2] Kucera, Jessop, Alvarez, Gortler, Light, *Rapid and Fast-Release Acetaminophen Gelcaps Dissolve Slower Than Acetaminophen Tablets*, Adv Inv Pha The Medic, 1:63-71 (Nov. 12, 2018)

2

contend the findings of the study render Defendant's statements regarding the Rapid Release Gelcaps "false, misleading, deceptive, and unfair." (*Id.* ¶ 71.) Further, Plaintiffs claim Defendant "knew or should have known that its representations about the [Rapid Release Gelcaps] were false, misleading, and/or deceptive." (*Id.* ¶ 75.)

Plaintiffs are a group of consumers from California. (*Id.* ¶¶ 14-21.) Additionally, Plaintiffs represent a proposed class of hundreds of thousands of consumers who purchased and used the Rapid Release Gelcaps.[3] (*Id.* ¶ 142.) Each Plaintiff purchased the Rapid Release Gelcaps relying on marketing and labelling that described the product as according faster relief than normal Tylenol tablets. (*Id.* ¶¶ 10-11.) Due to this purported benefit over tablets, Defendant sold its Rapid Release Gelcaps at a higher price than its other acetaminophen tablets. (*Id.* ¶ 39.) Plaintiffs claim they were deceived by Defendant's representations regarding the Rapid Release Gelcaps and would not have purchased them had they not been misled to believe the Rapid Release Gelcaps would provide faster relief than other, cheaper acetaminophen products. (*Id.* ¶ 12.)

On July 27, 2019, Plaintiffs filed a nine-count Complaint against Defendant asserting claims for violation of California False Advertising Law ("FAL") individually and on behalf of the California Class (Count One), violation of California Unfair Competition Law ("UCL") individually and on behalf of the California Class (Count Two), violation of California Consumers Legal Remedies Act ("CLRA") individually and on behalf of the California Class (Count Three),

---

accessible at http://www.kenkyugroup.org/article/8/173/Rapid-and-Fast-Release-Acetaminophen-Gelcaps-Dissolve-Slower-Than-Acetaminophen-Tablets

[3] Plaintiffs propose a "National Class" and "California Class." The "National Class" is defined as "[d]uring the fullest period allowed by law, all persons who purchased the Class Rapid Release Gelcaps in the United States," while the "California Class" is defined as "[d]uring the fullest period allowed by law, all persons who purchased the Class Rapid Release Gelcaps in the State of California." (ECF No. 1 ¶ 143.)

violation of the Song-Beverly Consumer Warranty Act ("Song-Beverly Act") individually and on behalf of the California Class (Count Four), breach of implied warranty of merchantability individually and on behalf of the National Class (Count Five), breach of express warranty individually and on behalf of the National Class (Count Six), violation of the Magnuson-Moss Warranty Act ("MMWA") individually and on behalf of the National Class (Count Seven), unjust enrichment individually and on behalf of the National Class (Count Eight), and declaratory relief individually and on behalf of the National Class (Count Nine). (ECF No. 1.) On September 27, 2019, Defendant filed a Motion to Dismiss Plaintiffs' Complaint. (ECF No. 23.) On October 21, 2019, Plaintiffs filed an Opposition to the Motion to Dismiss. (ECF No. 26.) On October 28, 2019, Defendant filed a Reply to the Opposition to the Motion to Dismiss. (ECF No. 28.) On December 16, 2019, Plaintiffs filed a Motion for Leave to File Supplementary Authority in support of its Opposition. (ECF No. 29.) On January 6, 2020, Defendant filed an Opposition to Plaintiffs' Motion for Leave. (ECF No. 30.)

## II. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*,

478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability requirement." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

While, as a general rule, the court may not consider anything beyond the four corners of

5

the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *Burlington*, 114 F.3d at 1426 (quoting *Shaw*, 82 F.3d at 1220).

### III. DECISION

#### A. Motion to Dismiss

##### 1. Consumer Protection Claims

Defendant presents several arguments regarding Plaintiffs' claims under the UCL (Count One), FAL (Count Two), and CLRA (Count Three) (collectively, the "Consumer Protection Claims"). The Court addresses each, in turn.

First, J&J contends the phrases used in its labeling and advertising are non-actionable puffery. (ECF No. 23-3 at 26.) Specifically, Defendant argues the challenged statements are "generalized, vague, and non-quantified words, descriptions and slogans." (*Id.* at 29.)

As a matter of law, puffery is not actionable. *See Castrol Inc. v. Pennzoil*, 987 F.2d 939, 945 (3d Cir. 1993). Puffery involves "outrageous generalized statements, not making specific claims, that are so exaggerated as to preclude reliance by consumers." *Cook, Perkiss & Leihe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246 (9th Cir. 1990). Conversely, non-puffery—which is actionable—involves statements that refer to "specific or absolute characteristics" of a product such that "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1082 (N.D. Cal. 2017).

6

Plaintiffs identify several statements and representations as misleading, including "fast working pain relief," "rapid speed," "release medicine fast, for fast pain relief," and that the product had "laser drilled holes" that "release medicine fast for fast pain relief." (ECF No. 1 ¶ 61.) Plaintiffs contend, in making these representations, "J&J sought to elevate the [Rapid Release Gelcaps] above other cheaper, non-rapid release products, and imply that [Rapid Release Gelcaps] have greater efficacy and speed." (ECF No. 26 at 16.) The Court agrees.

Significantly, Plaintiffs cite two cases in the District of California that expressly found the same "rapid release" language to be actionable non-puffery that "would plausibly lead to the conclusion that a reasonable consumer could interpret the [rapid release] labels to contain factual statements upon which [plaintiff] could rely." *Edwards v. Walmart, Inc.*, No. CV 18-9655-GW(FFMx) (C.D. Cal. Apr. 18, 2019); *see also Bailey v. Rite Aid Corp.*, No. 18-6926, 2019 U.S. Dist. LEXIS 153498, at *7 (N.D. Cal. Sept. 9, 2019) (finding the labeling of a product as "rapid release" constituted actionable non-puffery). Therefore, Plaintiffs have adequately alleged the challenged statements are non-puffery.

Nevertheless, Defendant contends the Consumer Protection Claims must be dismissed because (1) the challenged statements are not misstatements of facts and (2) Plaintiffs' claims do not satisfy the pleading requirements of 9(b). (ECF No. 23-3 at 21, 33.)

To state a claim under California's Consumer Protection Laws, a statement need not necessarily be untrue if a reasonable consumer could find the statement would be "either actually misleading" or having the "capacity, likelihood, or tendency to deceive or confuse the public." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Taken in the light most favorable to Plaintiffs, they have alleged the labeling of the Rapid Release Gelcaps plausibly confuse or mislead the public. First, Plaintiffs allege J&J sells the Rapid Release Gelcaps as an alternative

7

to—and at a higher price than—traditional acetaminophen tablets. (ECF No. 1 ¶ 39.) Additionally, Plaintiffs have alleged the Kucera Study has demonstrated the Rapid Release Gelcaps dissolve at a slower rate than traditional tablets and that Defendant knew or should have known this. (*Id.* ¶ 70.) Taken together, these allegations provide sufficient basis for Plaintiffs' Consumer Protection Claims. *See Bailey*, 2019 U.S. Dist. LEXIS 153498, at *18.

Further, Plaintiffs provide detailed allegations regarding specific representations made in Defendant's extensive marketing campaign as well as those made on the product packaging and labelling. (*See id.* ¶¶ 44-62.) Further, the Complaint details how each individual Plaintiff was misled by the products advertisements. (*Id.* ¶¶ 71-140.) Indeed, the Complaint sets forth the "who, what, when, where, and how of the misconduct charged" as required by 9(b). *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). Therefore, these detailed allegations sufficiently comport with the 9(b) pleading requirements. *See Bailey*, 2019 U.S. Dist. LEXIS 153498, at *18.

Finally, J&J contends the Consumer Protection Claims must fail because they are improper substantiation claims. (ECF No. 23-3 at 39.) A substantiation claim is a claim where only a prosecuting authority may challenge advertising language for lacking proper scientific substantiation. *Kwan v. SanMedica Int'l*, 854 F.3d 1088 (9th Cir. 2017). However, the Consumer Protection Claims are not predicated on substantiation. Insofar as Plaintiffs cite the Kucera study, they simply do so to demonstrate the deceptive nature of the challenged statements. *See Bailey*, 2019 U.S. Dist. LEXIS 153498, at *18 (Plaintiff "merely uses a scientific study as evidence in support of his allegation that the labeling of the [rapid release products] misled consumers"). For this reason, Defendant's argument fails.

Accordingly, for the reasons stated above, Defendant's Motion to Dismiss the Consumer Protection Claims is **DENIED**.

### 3. Warranty Claims

Defendant contends Plaintiffs' claims for violations of the Song Beverly Act (Count Four), MMWA (Count Seven), express warranty (Count Six), and implied warranty (Count Five) (collectively, the "Warranty Claims") fail for several reasons. The Court addresses each below.

#### i. MMWA (Count Seven)

Defendant contends Plaintiffs' MMWA claims should be dismissed because: (1) the MMWA is inapplicable where the Federal Food, Drug, and Cosmetic Act ("FDCA") governs written warranties with respect to an FDA-regulated product, (2) Defendant never made an affirmation of fact, and (3) the challenged statements were merely product descriptions. (ECF No. 23-3 at 42-45.)

The MMWA provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief." 15 U.S.C. § 2310(d)(1). However, the MMWA is "inapplicable to any written warranty the making or content of which is otherwise governed by Federal law. If only a portion of a written warranty is so governed by Federal law, the remaining portion shall be subject to this chapter." 15 U.S.C. 2311(d).

Indeed, The FDCA and its accompanying regulations contain labeling and advertising requirements for drugs. Under the FDCA, "labeling" is defined as "all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article." 21 U.S.C. § 321(m). Labels for drugs must include "the established name and quantity or, if determined to be appropriate by the Secretary, the proportion of each active ingredient." *Id.* § 352(e)(1)(A)(ii). Through the FDCA, the FDA extensively regulates the

9

labeling, marketing, and sale of all over-the-counter medications, including the Rapid Release Gelcaps. *See generally* 21 C.F.R. § 201.56; *Id.* § 201.80. Nevertheless, Plaintiffs contend their MMWA claim does not fail because the phrase "rapid release" does not appear in any of the FDCA or FDA regulations. This argument is without merit. Plaintiffs do not cite to any authority in making their contention; and furthermore, no Court held that such a level of specificity is required.

Finally, Plaintiffs' Complaint acknowledges the FDA regulates Rapid Release Gelcaps. (*See* ECF No. 1 ¶ 157) ("J&J's marketing and sale of [Rapid Release Gelcaps] is regulated by the [FDA]. The FDA exercises regulatory control over prescription and over the counter medications in the United States, including acetaminophen.") As such, the MMWA is inapplicable to any alleged express or implied warranty claims on the labeling of the Rapid Release Gelcaps. *See Dopico v. IMS Trading Corp.*, 2018 WL 4489677 (D.N.J. Sept. 18, 2018) (finding the MMWA inapplicable to labelling of products regulated by the FDA); *see also Reid v. GMC Skin Care USA Inc.*, No. 15-277, 2016 WL 403497, at *13 (N.D.N.Y. Jan. 15, 2016) ("The majority of courts that have considered whether § 2311(d) bars an MMWA claim founded on the labels of products governed by the FDCA have concluded that MMWA claim is barred."); *Jasper v. MusclePharm Corp.*, No. 14–02881, 2015 WL 2375945, at *5–6 (D. Colo. April 9, 2015) (finding that because dietary supplement product labels containing allegedly misleading claims about the supplement's attributes or effects were governed by the FDCA, § 2311(d) barred the plaintiff's MMWA claim), *recommendation adopted*, 2015 WL 2375945 (D. Colo. May 15, 2015). Accordingly, Defendant's Motion to Dismiss Count Seven of the Complaint is **GRANTED.**

###### ii. Express Warranty (Count Six), Implied Warranty (Count Five), and Song-Beverly Act (Count Four)

Plaintiffs remaining warranty claims include claims for violation of express warranty, implied warranty, and a violation of the Song-Beverly Act. (ECF No. 1 ¶¶ 187-222.)

Defendant contends Plaintiffs express warranty claim fails because J&J never made an actionable "affirmation of fact." (ECF No. 23-3 at 45.) Conversely, Plaintiffs argue the challenged statements create an express warranty that promises the Rapid Release Gelcaps provide faster relief than ordinary tablets. (ECF No. 26 at 25.)

To sustain a claim for violation of an express warranty, a plaintiff must plead "the exact terms of the warranty" by identifying a factual statement that is "specific and unequivocal." *T&M Solar Air Conditioning, Inc. v. Lennox Int'l, Inc.*, 83 F. Supp. 3d 855, 875 (N.D. Cal. 2015); *see also Maneely v. Gen. Motors. Corp.*, 108 F.3d 1176, 1181 (9th Cir. 1997) (rejecting express warranty claim where no "specific and unequivocal statement" or "explicit guarantees" were made).

Here, Plaintiffs fail to refer to or allege actual language on the packaging of the Rapid Release Gelcaps—or anywhere in the advertising or marketing—which actually promises faster relief. Additionally, Plaintiffs fail to cite any wording that incorporates comparative representations. Simply representing a product as providing "rapid relief" or "fast relief" is insufficient to state an express warranty claim. *See Bailey*, 2019 U.S. Dist. LEXIS 153498, at *21 (dismissing an express warranty claim where the challenged statements merely included statements of "rapid relief"); *see also Edwards*, No. CV 18-9655-GW(FFMx) (same). These statements do not rise to the level of express warranty because the wording does not show the Rapid Release Gelcaps provide *faster* relief than any other product.

Additionally, to state a claim for violation of implied warranty of merchantability, a plaintiff must allege the product is unfit for its ordinary purpose. *See American Suzuki Motor Corp. v. Superior Ct.*, 37 Cal. Rptr. 2d 526, 528 (Cal. Ct. App. 1995). However, the implied warranty of

11

merchantability ensures only "a minimum level of quality" and does not "impose a general requirement that goods precisely fulfill the expectation of the buyer." *Id.*

Based on the above, Plaintiffs' implied warranty claim also fails. In its Opposition, Plaintiffs concede the Rapid Release Gelcaps may be fit for their ordinary purpose by providing the "minimum level of quality necessary." (ECF No. 26 at 27.) However, Plaintiffs still maintain the implied warranty claim is valid based on the merits of the express warranty claim. (*Id.*) Therefore, because the express warranty claim fails, so too does the implied warranty claim.

Finally, the Song-Beverly Act governs claims relating to "consumer goods." Cal Civ. Code § 1791(a). Specifically excluded from the act are "consumables" which is defined as "any product that is intended for consumption . . . or use by individuals for purposes of personal care or in the performance of services ordinarily rendered within the household, and that usually is consumed or expended in the course of consumption or use." *Id.* § 1791(d).

Plaintiffs concede the Rapid Release Gelcaps are "consumables" under the Song-Beverly Act and are therefore excluded from the Song-Beverly Act. (ECF No. 26 at 22.) However, Plaintiffs attempt to salvage the claim by stating the Song-Beverly Act encompasses "consumables accompanied by an express warranty." (*Id.*) Again, Plaintiffs have failed to demonstrate the existence of an express warranty. Therefore, their Song-Beverly Act claim fails.

Accordingly, for the reasons stated above, Defendant's Motion to Dismiss Counts Four, Five, and Six is **GRANTED.**

### 5. Unjust Enrichment (Count Eight) and Declaratory Relief (Count Nine)

Finally, Defendant contends Plaintiffs claims for unjust enrichment and declaratory relief fail because they cannot serve as a standalone claim for relief. (ECF No. 23-3 at 47.) Indeed, declaratory relief remains a form of relief that may be requested in conjunction with a cognizable

cause of action, rather than an independent cause of action under California law. *See Sacramento E.D.M., Inc. v. Hynes Aviation Indus.*, No. 13-0288, 2017 U.S. Dist. LEXIS 59216, at *20 (E.D. Cal. Apr. 18, 2017), *rev'd in part on other grounds*, *Sacramento E.D.M., Inc. v. Hynes Aviation Industries, Inc.*, 761 F. App'x 678 (9th Cir. 2019).

Further, "in California, there is not a standalone cause of action for 'unjust enrichment.'" *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). However, "[w]hen a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'" *Id.* (citing *Rutherford Holdings, LLC v. Plaza Del Rey*, 2014 WL 255537 (Cal. Ct. App. Jan. 23, 2014)).

Plaintiffs allege they are entitled to relief because J&J sold the Rapid Release Gelcaps "by making false, misleading, and/or deceptive representations about the products' speed and capabilities" and "unjustly charged . . . a premium to purchase the" Gelcaps and therefore "obtained monies that rightfully belong" to Plaintiffs. (ECF No. 1 ¶¶ 233-40.) This statement is sufficient to state a quasi-contract cause of action. *See Bailey*, 2019 U.S. Dist. LEXIS 153498, at *22-23 (citing *Astiana*, 783 F.3d at 762).

Accordingly, Defendant's Motion to Dismiss is **DENIED** as to Count Eight and **GRANTED** as to Count Nine.

### B. Motion for Leave to Amend to File Supplemental Authority

Plaintiffs request leave to submit supplemental authority to address the purported preemption argument in Defendant's Motion to Dismiss. (ECF No. 29 at 1.) However, Plaintiffs concede that J&J does not raise any arguments based on preemption. (ECF No. 23 at 8.) Therefore, the Court finds no basis to grant leave, and accordingly, Plaintiffs' Motion is **DENIED.**

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is **GRANTED** with respect to Counts Four, Five, Six, Seven, and Nine, and **DENIED** with regards to Counts One, Two, Three, and Eight. Additionally, Plaintiffs' Motion for Leave to Submit Supplemental Authority is **DENIED.** An appropriate order will follow.

**Date: May 19, 2020**  /s/ *Brian R. Martinotti*
  **HON. BRIAN R. MARTINOTTI**
  **UNITED STATES DISTRICT JUDGE**